**Fill in this information to identify the case**

Debtor 1  Eric A. Hershberger AKA Eric Anthony Hershberger

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: SOUTHERN District of INDIANA
                                                                         (State)

Case number  16-71131

## Official Form 410S1
## Notice of Mortgage Payment Change                                    12/15

If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

| | |
|---|---|
| **Name of creditor** | Bayview Loan Servicing, LLC, a Delaware Limited Liability Company |

| | |
|---|---|
| **Last four digits** of any number you use to identify the debtor's account: | 0737 |

**Court claim no.** (if known)    13

**Date of payment change**
Must be at least 21 days after date of this notice                          10/1/2020

**New total payment:**
Principal, interest, and escrow, if any            $205.79

| Part 1: | Escrow Account Payment Adjustment |
|---|---|

1. Will there be a change in the debtor's escrow account payment?

   ☐ No
   ☒ Yes.  Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment:  $38.05        New escrow payment:  $40.61

| Part 2: | Mortgage Payment Adjustment |
|---|---|

2. Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?

   ☐ No
   ☒ Yes.  Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate:  5.016%      New interest rate:  6.016%

   Current principal and interest payment:  $147.77    New principal and interest payment:  $165.18

| Part 3: | Other Payment Change |
|---|---|

3.  Will there be a change in the debtor's mortgage payment for a reason not listed above?

☒ No
☐ Yes.  Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. *(Court approval may be required before the payment change can take effect)*

Reason for change: _____

Current mortgage payment: $_____        New mortgage payment: $_____

20-016212_TMW

Debtor 1     Eric A. Hershberger AKA Eric Anthony Hershberger          Case
number (if known) 16-71131
       First Name             Middle Name        Last Name

| Part 4: | Sign Here |
|---|---|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

Check the appropriate box.

☐   I am the creditor.
☐   I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

_x_   /s/ Amy E. Gardner         Date   9/8/2020
    Signature

Print:     Amy E. Gardner          Title   Attorneys for Creditor

Company    Manley Deas Kochalski LLC

Address     P.O. Box 165028
         Number       Street

      Columbus, OH   43216-5028
      City            State       ZIP Code

Contact phone   614-220-5611        Email   amps@manleydeas.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Notice of Payment Change

was served on the parties listed below via e-mail notification:

Office of U.S. Trustee, Party of Interest, (Registered address)@usdoj.gov

Robert P. Musgrave, Chapter 13 Trustee Office, P.O. Box 972, Evansville, IN  47706-0972, ecf@chap13evv.com

Lloyd Koehler, Attorney for Eric A. Hershberger AKA Eric Anthony Hershberger, 400 Pearl St. Ste 200, New Albany, IN  47150, lloydkoehler@hotmail.com

and on the below listed parties by regular U.S. mail, postage prepaid on September  8 , 2020:

Eric A. Hershberger AKA Eric Anthony Hershberger, 1214 Locust St., Mount Vernon, IN 47620

Eric A. Hershberger AKA Eric Anthony Hershberger, 1214 Locust Street, Mt. Vernon, IN 47620

/s/ Amy E. Gardner

20-016212_TMW

**BAYVIEW** LOAN SERVICING®

P.O. Box 331409
Miami FL 33233-1409

| ANTICIPATED ESCROW ACCOUNT DISBURSEMENTS | |
|---|---|
| COUNTY TAX | $337.02 |
| HAZARD INS | $135.96 |
| Total | $472.98 |
| Escrow Payment Calculation | $472.98 / 12 months = |
| | $39.42 |

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT**
ESCROW ANALYSIS STATEMENT PREPARED FOR

RedactedRedactedRedactedRedactedRedactedRedacted

**ESCROW ANALYSIS DATE: 08/05/2020**

Eric A Hershberger
C/O Lloyd E Koehler                4210
400 Pearl St Ste 200
New Albany, IN 47150-3451

**NEW PAYMENT IS AS FOLLOWS:**

| | |
|---|---|
| Principal and Interest | $165.18 |
| Required Escrow Payment | $39.42 |
| Shortage/Surplus Spread | $1.19 |
| Optional Coverages | |
| Buydown or Assistance Payments | |
| Other | |
| **Total Payment** | **$205.79** |
| **New Payment Effective Date:** | **10/01/2020** |
| Current Payment Due Date: | 02/01/2020 |

This statement provides a detailed summary of activity related to your escrow account. Bayview Loan Servicing maintains your escrow account to pay such items as property taxes, insurance premiums, and/or mortgage insurance. The escrow items to be disbursed from your account over the next twelve months are summarized above.

**ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR**

The following estimate of activity in your escrow account from 10/2020 through 09/2021 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included. This also includes the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| MONTH | PAYMENTS TO ESCROW ACCOUNT | PAYMENTS FROM ESCROW ACCOUNT | | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|---|
| | | MIP/PMI | FLOOD | HAZ. INS. | WIND INS. | TAXES | TAX DESC. | PROJECTED | REQUIRED |
| STARTING BAL | | | | | | | | $161.03¹ | $219.23² |
| OCT 20 | $39.42 | | | | | $163.85 | COUNTY TAX-2 | $36.60 | $94.80 |
| OCT 20 | | | | $11.33 | | | | $25.27 | $83.47 |
| NOV 20 | $39.42 | | | $11.33 | | | | $53.36 | $111.56 |
| DEC 20 | $39.42 | | | $11.33 | | | | $81.45 | $139.65 |
| JAN 21 | $39.42 | | | $11.33 | | | | $109.54 | $167.74 |
| FEB 21 | $39.42 | | | $11.33 | | | | $137.63 | $195.83 |
| MAR 21 | $39.42 | | | $11.33 | | | | $165.72 | $223.92 |
| APR 21 | $39.42 | | | | | $173.17 | COUNTY TAX-1 | $31.97 | $90.17 |
| APR 21 | | | | $11.33 | | | | $20.64 * | $78.84 LP |
| MAY 21 | $39.42 | | | $11.33 | | | | $48.73 | $106.93 |
| JUN 21 | $39.42 | | | $11.33 | | | | $76.82 | $135.02 |
| JUL 21 | $39.42 | | | $11.33 | | | | $104.91 | $163.11 |
| AUG 21 | $39.42 | | | $11.33 | | | | $133.00 | $191.20 |
| SEP 21 | $39.42 | | | $11.33 | | | | $161.09 | $219.29 |
| Total | | | | $135.96 | | $337.02 | | | |

(1)  Your current escrow balance is negative $109.38. To project the next year's tax and insurance payment we added $304.40 for payments not yet made and subtracted $33.99 for disbursement not yet made.  This brings your projected starting balance to $161.03 (see breakdown on next page).

(LP)  The lowest (LP) required escrow balance for the next 12 months is scheduled to be $78.84 (cushion) which is 1/6 of the anticipated escrow account installment. Under Federal Law (RESPA) or applicable state law, a cushion in your escrow account is permitted (excluding MIP/PMI).

(*)  Your lowest (*) projected escrow balance for the next 12 months is scheduled to be $20.64. Your bankruptcy escrow claim amount of $43.92 will be added to your escrow balance.  The difference between the lowest projected balance, bankruptcy escrow claim amount and cushion is $14.28. This results in a shortage once all the payments not yet made for the tax and insurance portion are received.

(2)  Based on the escrow account projection for the coming year indicated above, your escrow account requires a starting escrow balance of $219.23 to arrive at the lowest (LP) required escrow balance.

**This escrow analysis is based on the assumption that all escrow advances made on your loan prior to your bankruptcy filing date are included in your bankruptcy plan and will be paid through that plan. In other words, we are only analyzing for taxes (and insurance if applicable) that will come due after your current bankruptcy filing date.**

**IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE NOTIFY US AND PROVIDE THIS CORRESPONDENCE TO YOUR ATTORNEY.**

**ESCROW SHORTAGE REMITTANCE FORM**

Name: Eric Hershberger

RedactedRedacted

**Escrow Shortage Amount: $14.28**

Your escrow shortage has been spread over a 12 month period, which may result in an increase in your payment.  If you choose to pay your Escrow Shortage Amount in a lump sum, please include your account number on your check, and mail this coupon with your remittance to:

BAYVIEW LOAN SERVICING, LLC          Amount Enclosed: $_____
P.O. BOX 4425
CORAL GABLES FL 33146-4425

Your new payment will then be: $204.60.

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - ACCOUNT HISTORY**

RedactedRedactedRedactedRedacted

Name: Eric A Hershberger

This is a statement of actual activity in your escrow account from 10/2019 through 09/2020. Last year's projections are next to the actual activity.  Your mortgage payment for the past year was $185.82 of which $147.77 was for principal and interest and $38.05 went into your escrow account.  An asterisk(*) indicates a difference from a previous estimate either in the date or the amount.  An 'E' indicates a projected disbursement or payment.

Your anticipated low point may or may not have been reached based on one or more of the following factors:

| PAYMENT(S) | TAXES | INSURANCE |
|---|---|---|
| • Monthly payment(s) were received less than OR greater than expected<br>• Monthly payment(s) were received earlier OR later than expected<br>• Previous overage was returned to escrow<br>• Previous deficiency/shortage not paid entirely | • Tax rate and/or assessed value changed<br>• Exemption status lost or changed<br>• Tax bill paid earlier OR later than expected<br>• Supplemental/Delinquent tax paid<br>• Tax installment not paid<br>• Tax refund received<br>• New tax escrow requirement paid | • Premium changed<br>• Coverage changed<br>• Additional premium paid<br>• Insurance bill paid earlier OR later than expected<br>• Premium was not paid<br>• Premium refund received<br>• New  insurance escrow requirement paid<br>• Force placed insurance premium paid |

| MONTH | PAYMENTS TO ESC. ACCT. PROJECTED | ACTUAL | PAYMENTS FROM ESC. ACCT. PROJECTED | ACTUAL | DESCRIPTION | ESCROW BAL. PROJECTED | COMPARISON ACTUAL |
|---|---|---|---|---|---|---|---|
| STARTING BAL | | | | | | $208.42 | $220.21- |
| OCT | $38.05 | $37.03 * | $153.76 | $163.85 * | COUNTY TAX-2 | $92.71 | $347.03- |
| OCT | | | $11.58 | $0.00 * | HAZARD INSUR | $81.13 | $347.03- |
| OCT | | | $11.79 * | | HAZARD INS | $81.13 | $358.82- L |
| NOV | $38.05 | $74.06 * | $11.58 | $0.00 * | HAZARD INSUR | $107.60 | $284.76- |
| NOV | | | | $11.41 * | HAZARD INS | $107.60 | $296.17- |
| DEC | $38.05 | $37.03 * | $11.58 | $0.00 * | HAZARD INSUR | $134.07 | $259.14- |
| DEC | | | | $11.79 * | HAZARD INS | $134.07 | $270.93- |
| JAN | $38.05 | $37.03 * | $11.58 | $0.00 * | HAZARD INSUR | $160.54 | $233.90- |
| JAN | | | | $11.79 * | HAZARD INS | $160.54 | $245.69- |
| FEB | $38.05 | $115.26 * | $11.58 | $0.00 * | HAZARD INSUR | $187.01 | $130.43- |
| FEB | | | | $11.03 * | HAZARD INS | $187.01 | $141.46- |
| MAR | $38.05 | $37.03 * | $11.58 | $0.00 * | HAZARD INSUR | $213.48 | $104.43- |
| APR | $38.05 | $37.03 * | $163.85 | $173.17 * | COUNTY TAX-1 | $87.68 | $240.57- |
| APR | | | $11.58 | $0.00 * | HAZARD INSUR | $76.10 | $240.57- |
| APR | | | | $22.57 * | HAZARD INS | $76.10 | $263.14- |
| MAY | $38.05 | $111.88 * | $11.58 | $0.00 * | HAZARD INSUR | $102.57 | $151.26- |
| MAY | | | | $11.53 * | HAZARD INS | $102.57 | $162.79- |
| JUN | $38.05 | $38.05 | $11.58 | $0.00 * | HAZARD INSUR | $129.04 | $124.74- |
| JUN | | | | $11.16 * | HAZARD INS | $129.04 | $135.90- |
| JUL | $38.05 | $38.05 | $11.58 | $0.00 * | HAZARD INSUR | $155.51 | $97.85- |
| JUL | | | | $11.53 * | HAZARD INS | $155.51 | $109.38- |
| AUG | $38.05 | $266.35 *E | $11.58 | $11.33 *E | HAZARD INSUR | $181.98 | $145.64 |
| AUG | | | | $11.33 *E | HAZARD INS | $181.98 | $134.31 |
| SEP | $38.05 | $38.05  E | $11.58 | $11.33 *E | HAZARD INSUR | $208.45 | $161.03 |
| Total | $456.60 | $866.85 | $456.57 | $485.61 | | | |

* = indicates a difference from a previous estimate either in the date or the amount
'E' = projected disbursement or payment
'L' = Lowest Escrow Balance

**Starting Projected Escrow Balance:**

| | |
|---|---|
| Current Escrow Balance | $109.38- |
| Payments Not Yet Made | $304.40 |
| Disbursements Not Yet Made | $33.99 |
| **Projected Escrow Balance** | **$161.03** |

At the time of your escrow account review, your expected lowest balance was $76.10 (cushion) or 1/6 of the anticipated escrow payment. Your actual lowest escrow balance was negative $358.82, as shown in the above "Account History".

**Confirmed SII Disclaimer:** If you are a confirmed successor in interest of the account, unless you assume the mortgage loan obligation under state law, you are not personally liable for the mortgage debt and cannot be required to use your own assets to pay the mortgage debt.

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only. It does not constitute an attempt to collect a debt, to reaffirm a debt, or to impose any personal liability on you. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. If your original obligation was discharged, any payment you make on the account is voluntary, but we still have rights under the security instrument, including the right to foreclose on the property. If you are represented by an attorney, please refer this letter to your attorney, and provide us with the attorney's name, address, and telephone number.

RedactedRedactedRedacted

**Should you require additional information, please call Customer Service: 1-800-457-5105**
**Mon-Fri, 8:00 a.m. to 7:00 p.m., EST**
**www.bayviewloanservicing.com**

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

_____ *[Space Above This Line For Recording Date]* _____

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of September 10, 2015 (the "Effective Date"), by and between, Bayview Loan Servicing, LLC, ("Servicer") and ERIC A HERSHBERGER ("Borrower").

## RECITALS

A.  Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 07/17/1997, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $30,200.00 .

B.  The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 07/17/1997, in the original principal sum of $30,200.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C.  Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer.  Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

## AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

1.  NOTE MODIFICATIONS:
    (a)  Outstanding Debt:
    Borrower agrees that the unpaid principal balance due on the Note of  $24,971.02 , shall be increased by $4,965.63 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of  $29,936.65  ("New Balance"). Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Borrower agrees to pay the Unpaid Sums Due to Servicer and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

    (b)  New Monthly Payments, Payment Adjustments:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|-----------------------|-------------------|----------------------------|
| 1-3 | 3.018% | 09/01/2015 | $114.71 | $33.11 | $147.82 | 10/01/2015 | 36 |



| 4 | 4.016% | 09/01/2018 | $130.90 | Adjust Annually | Adjust Annually | 10/01/2018 | 12 |
| 5 | 5.016% | 09/01/2019 | $147.77 | Adjust Annually | Adjust Annually | 10/01/2019 | 12 |
| 6 | 6.016% | 09/01/2020 | $165.18 | Adjust Annually | Adjust Annually | 10/01/2020 | 12 |
| 7 | 7.016% | 09/01/2021 | $183.05 | Adjust Annually | Adjust Annually | 10/01/2021 | 12 |
| 8-36 | 8.000% | 09/01/2022 | $200.99 | Adjust Annually | Adjust Annually | 10/01/2022 | 341 |

Effective on 09/01/2022, Borrower's rate of interest will be 8.00% and will remain fixed for the remaining life of the loan.

(c) New Maturity Date:
The maturity date will be 02/01/2051, on which date any unpaid interest and all other sums due shall be paid in full.

2. ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

3. AGREEMENT NOT TO ENCUMBER:
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

4. ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:
The existing Mortgage and Note shall be amended to include the following: In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to irrevocably assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

5. CHANGE IN FINANCIAL STATUS:
In the event Borrower or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator; or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Servicer shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Servicer, including, but not limited to, immediate termination of this Agreement and filing and/or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Servicer's requests for such relief. This provision is a material inducement for Servicer to enter into this Agreement.

6. NO OTHER CHANGES:
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.



From:Alexandrian Public Library  10/23/2015 11:36    #124 P.003/003

**7.  NO RELIANCE; CONSTRUCTION:**
Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**8.  NO ORAL MODIFICATION:**
This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**9.  SUCCESSORS AND ASSIGNS:**
This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**10.  ATTORNEY'S FEES:**
In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

Borrower and Lender agree that if there is a pending foreclosure action that results in a voluntary dismissal as a result of a modification or a similar settlement between Borrower and Lender than Borrower and Lender will each pay for their respective attorney fees and costs and neither party will be responsible for the other parties attorneys fees and costs.

**11.  ADDITIONAL AGREEMENTS:**
I agree to the following:

(a)  In the event Borrower defaults under this Agreement, without waiving any rights and remedies otherwise available to Servicer, Servicer shall thereupon be entitled to require and Borrower irrevocably consents to enter into either Servicer's Deed-In-Lieu or Short Sale program with respect to the Property.  Under the Deed-In-Lieu program you will voluntarily transfer ownership of the Property to Servicer or Servicer's designee to satisfy the amounts due on the Loan.  The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

(b)  Borrower will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-in-Lieu or Short Sale program and will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Servicer's procedures in connection with such program(s).

**12.  PARTIAL INVALIDITY:**
If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

Borrower:

By: _Eric A Hershberger_    Date: _9-25-15_
ERIC A HERSHBERGER

10/23/2015   12:44PM (GMT-04:00)

Servicer:

Rafael Alvarez
Assistant **Vice President**

By: _____    Date: 10·2a·15

Vice President, Bayview Loan Servicing, LLC

Licensed Loan Originator Louis Ferrante
MLO License Number Redacted
Direct:  877-650-0140 Ext. 1361  Monday - Friday 9:00 am to 6:00 pm ET
Fax:     877-360-9593





Loan No

SERVICER SIGNATURE:

STATE OF FLORIDA                    §
                                    §
COUNTY OF MIAMI DADE                §

On __10/26/2015__, before me, ___J. MARIN___, a notary public for and within the said county, personally appeared, __RAFAEL ALVAREZ__ of Bayview Loan Servicing, LLC, as Servicer, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146, personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name is subscribed to the within instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person acted, executed the instrument.

WITNESS my hand and official seal,

J. MARIN
MY COMMISSION # FF211913
EXPIRES March 19, 2019

By: _J. Marin_

Notary Public:_J. Marin_____
Notary Public for the State of Florida
My commission expires: 03/19/2019

Bayview Loan Servicing, LLC.
4425 Ponce de Leon Blvd, Coral Gables, 33146